With that, I'll call the third and last case of the day, Tufts v. Hay. Chief, could we have just a brief comfort break? Sure. So my clock says 1220 right now. Does five minutes work? Five minutes will be perfect. Okay. We'll reconvene at 1225. And I'm just going to mute mine so that we don't all have to dial back in. Thank you, Judge Martin. Thank you. You're welcome. I don't know that everybody's back yet. I'm back, Judge Martin. This is Robin Rosenbaum. I'm also back. I know your voice. Judge Tallman, are you with us? Yes, I'm here. All right. And I don't know, Tom, if you've got counsel unmuted. Is Mr. Brownlee with us? Or was that Mr. Brownlee? I don't know who that was. Yeah, Judge, I believe Mr. Flinke is up next. All right. And Mr. Flinke and Ms. – I just want to be sure we have both counsel ready to go. Yes. Okay. All right. Wonderful. Then I'll – we can start with argument. And Mr. Flinke, your first two minutes will be uninterrupted. Thank you, Your Honor. This is – may it please the court, Jacob Flinke on behalf of Thomas Scott Pellitz, Thomas Scott Tufts, and the Tufts Law Firm PLLC. The district court should be reversed because it misapplied this court's precedent regarding the Barton Doctrine. This case involves a post-confirmation dispute between dualing counsel. Appellant Tufts is a Florida attorney and law firm who was engaged by Appellee Hay to pursue litigation in Florida on behalf of a mutual client who was previously a debtor in a bankruptcy case that was pending in North Carolina. Tufts has suffered damages as a result of negligence and intentional misrepresentations that were made by Hay to Tufts in Florida. The parties dispute a post-confirmation regarding representation in a bankruptcy case that has now been dismissed. It has been conceded that the instant lawsuit could have no conceivable effect on the now-dismissed bankruptcy case. And for that reason, the Barton Doctrine does not apply. In addition, the Barton Doctrine does not apply because the alleged facts are ultra-various and not within the scope of the defendant's appointment as trustee. And for the separate reason that this dispute arose in the course of the debtor's post-confirmation business, and therefore the exception in 28 U.S.C. section 959 applies. Furthermore, since Hay committed tortious acts in Florida by making misrepresentations to Tufts in Florida, the district court in Florida correctly found that it has personal jurisdiction over Hay. To my mind, the biggest issue in this case is the Barton Doctrine. And under this court's precedent in Carter v. Rogers and Lawrence v. Goldberg, this court described the appropriate test to determine whether litigation is related to a bankruptcy case for purposes of the Barton Doctrine. And in those cases, it employed a conceivable effect test. And that test asked whether the litigation could have any conceivable effect on the bankruptcy case. Counsel, if this bankruptcy estate had been open, let's assume it was open to this day, would you concede that the Barton Doctrine would apply? Yes, Your Honor. If the case were open today, I think the Barton Doctrine, it could conceivably have an effect on the bankruptcy case, and therefore the Barton Doctrine would apply. But there has to be some... I'm sorry, I didn't mean to interrupt you. No, I was just... My follow-on question was, how do we address the concern that I guess Judge Posner articulated in Lincoln that, you know, it's important for the bankruptcy court to look at these claims before they're filed in order to determine whether or not the bankruptcy trustee is engaged in acts that are either beyond the scope of the bankruptcy trustee's authority or maybe self-dealing or malpractice, whatever it might be. And that may not have a monetary effect on the bankruptcy estate itself, but it certainly is an affront to the bankruptcy court and something that the bankruptcy court needs to be aware of when it assigns attorneys as trustees to bankruptcy proceedings. Well, Your Honor, I think there are a couple different responses to that. The first is, there has to be some limiting principle to the Barton Doctrine. And in Carter and Lawrence, this court found that limiting principle to be the bankruptcy jurisdiction statute, 28 U.S.C. 1334. And under that, the bankruptcy court has jurisdiction of matters arising and arising under and related to the bankruptcy case and related to is the broadest. And it's extremely broad. It includes anything that could conceivably have an effect on the bankruptcy case. And so if you apply the Barton Doctrine in a way that's broader than that, you are expanding the statutory jurisdiction of the federal court through a judge-made rule. I'm not aware of any other context where a judge-made rule has… Except that it goes to the integrity of the judicial proceeding. As I understand the allegations, there were misrepresentations made to the bankruptcy judge at the time that your client was engaged to represent the estate in related matters in Florida or the bankruptcy trustee made material omissions and failed to obtain bankruptcy court approval for the settlement and the receipt of the proceeds in the trust account. And why isn't the bankruptcy court the most appropriate place for the resolution of these sorts of claims? Because the bankruptcy court does not have jurisdiction any longer under Section 1334. But if you apply Barton that way, and that's what Carter and Lawrence, I think, get to when they address this issue. They talk about the related to tests, and they focus directly in on Section 1334 because that is the outer limit of a bankruptcy court's jurisdiction. And that's also described by this court in Lemco-Jimpson, which is cited in our materials, Miller v. Camara 8, and that arose in the Lemco-Jimpson case. And that case goes through the history of bankruptcy court jurisdiction and explains why Section 1334 has limits. And that case involved a purchaser of property at a bankruptcy sale and the landlord where that property was stored. And the 11th Circuit found once the property leaves the bankruptcy estate, there is no longer bankruptcy jurisdiction, even if the dispute arose from a bankruptcy court order. Counsel, picking up on Judge Tomlin's question, it seems to me there are four circuits that have held that the Barton Doctrine can still apply after a bankruptcy case has come to an end. Do you agree with that? I'm not sure how many, Your Honor, but I would agree that I think every circuit I'm aware of other than the 11th that's addressed the issue has reached that. So what is it that you think they've gotten wrong? Why do you think those other circuits are wrong? Because they don't appreciate the scope of bankruptcy jurisdiction under Section 1334.  And to apply Barton in a way that exceeds that, I mean, there's no other context I'm aware of where a judge-made rule expands the statutory jurisdiction of a federal court. The other fact I think that's important to recognize in this case is that this is a little bit of a unique situation because it's a dispute between dueling counsel. Both of these parties were both appointed by the bankruptcy court. They were both there as court-appointed counsel for the debtor. So this is not a situation where an unhappy party to the bankruptcy case is trying to sue the bankruptcy trustee for something they didn't like that happened during the bankruptcy case. This is a dispute between counsel who technically were not parties to the bankruptcy. So I think it's an important fact that these are dueling counsels, not parties to the bankruptcy case. And that puts this in a different light because the appellant attorney... Except that we've said that the Barton Doctrine applies to counsel as well. So, I mean, why is this different? Well, it would apply equally to both parties. It would apply... The principles and rationale behind the Barton Doctrine apply to Appellant Tufts equally, just the same as they apply to the appellee. Attorney Tufts was court-appointed as well. And, you know, under the WRT energy case, it talks about how when a case is post-confirmation, the jurisdiction of the bankruptcy court shrinks considerably. So applying Barton to require leave in a case from a court that no longer has jurisdiction runs afoul of the limited jurisdiction of federal courts. So is it Hayes' malpractice insurance policy that's going to pay any judgment that Tufts may obtain to recover his $300,000 in legal fees suffered in defending against the contempt proceedings or sanctions proceedings in the bankruptcy court? Your Honor, to be honest, I'm not sure. My understanding is that an insurance carrier is involved in this case, but Mr. Brownlee would probably be better to address that issue. Well, I guess my question is that there wouldn't... Even if the estate were still open, there wouldn't be any cash recovery that would go to increase the bankrupt estate in order to pay predator claims. That's correct, Your Honor. And if there's no other questions, I'll reserve the balance of my time. All right. Thank you. Good afternoon, Your Honors. This is Mike Brownlee, and I represent the Haye defendants. I think this question of the conceivable effect test, I mean, context is important here. This is a new question for this circuit. The few cases that have involved the Barton Doctrine, we have not had one where the bankruptcy estate has been wrapped up and has been concluded. In the Barton Doctrine cases out of the 11th, and there are only a few, the conceivable effect test was, I think, a way of aiding the analysis of the ultimate question, which is, is the ancillary proceeding related to the bankruptcy case? And here, I mean, I don't think anyone would dispute that it's related to the bankruptcy case. If you go through the amended complaint, it's literally all about the bankruptcy case. You know, we're not interpreting a statute here. We're interpreting cases, and, you know, holding of the cases is only as good as the facts it depends on. So I don't think that there's any reason to go, to separate from the other four circuits who have, you know, squarely rejected this question. And if you think about it, although Mr. Flanke is describing this, this is, you know, a battle between dueling counsel, this stems from a bankruptcy court's sanction order, which was revised several times, and took a lot of the bankruptcy court's time. And at no point, you know, and Mr. Tusk knew as of 2015, according to the complaint, he made written demand on our client to, you know, to remedy these purported misdeeds. The bankruptcy, it wrapped up in 2017. So for two years, there's not a word of any of the sorts of allegations that are being made now. And I think that's where we get into the integrity of the bankruptcy proceeding. It's almost, I don't want to say tantamount, but it's similar to a 60B motion, or a direct appeal of what the bankruptcy court did. And if, you know, in the Linton decision, they... Mr. Brownlee, this is Beverly Martin. We have not consulted each other on the panel, but I heard Judge Rosenbaum's question, and I wanted to tell you how I had in mind to answer that. So how I work through this is, you know, I mean, what we have to talk about is, you know, bankruptcy court jurisdiction, and whether the civil proceedings are related to the bankruptcy proceeding, and that has to do with, you know, the nexus. And then, to my mind, the Eleventh Circuit has an additional nexus requirement for this bankruptcy court jurisdiction over disputes like this one. And that extra requirement is the one that your brother keeps referring to, and that is that the action must, quote, conceivably have an effect on the bankruptcy estate. Because I think that, I mean, that distinguishes us from other circuits. We just have that extra nexus requirement. And the way I understand it was at the hearing on the motion to dismiss in front of Judge Dalton on February 12, 2019, Mr. Fisher, who was representing your client, conceded that there's no conceivable effect that this case would have on the estate. It says there's no conceivable effect that this case would have on the bankrupt estate. Didn't say bankrupt, but that's what he meant. And to a certain extent, that is true, and we concede that fact. So, why haven't you conceded this argument, that you don't meet the test, the peculiar test in the Eleventh Circuit for meeting the nexus requirement for bankruptcy court jurisdiction? Sure, Judge Martin. So, yes, that concession was made, but I think in context what Mr. Fisher was saying was sure, there's no financial impact on the administration of the estate, of course, because it's closed by now. But, as I believe he argued further at the hearing, all of the rationale behind the Linton doctrine, which this court approves provingly in Carter v. Rogers, all that same rationale applies. I approve of the Linton analysis as well. I just don't think it's the law in my circuit. Well, Judge Martin, I disagree because, again, I think you have to look at the context of these cases where the conceivable effect test came about. It starts in the Lemko-Gypsum case, which is not a Barton case. It doesn't even mention Barton once. Then it's reiterated, I suppose, in the first Barton case, which is Carter v. Rogers, and the way I read it, at least, is it's a way of when you have an ongoing bankruptcy proceeding, it's a way of determining whether is this really a bankruptcy issue, does this really stem from the bankruptcy proceeding, or is this something separate? So I think because we're in sort of new territory with, okay, well, what do we do if the bankruptcy proceeding is closed? I don't think that any of this court's precedent stands for the proposition that just because the bankruptcy proceeding is closed that the ancillary case can't be related to the bankruptcy proceeding. It undoubtedly is. Can you just help me with how that would work as a practical matter? We issue an opinion saying the bankruptcy court has to take this case. The debtor has been discharged, and the case is closed, and so there are no assets there. I'm having a hard time just figuring out as a practical matter what would the bankruptcy court do? Sure. So I think what would happen is, first of all, I don't think if you ruled in our favor on the Barton Doctrine issue, I don't think that you would have to say you need to go to the bankruptcy court. I think it would be you were supposed to go to the bankruptcy court first, and you didn't.  And who knows? I think we have to be careful about separating the cases discussing bankruptcy jurisdiction from Barton. Had they gone to the bankruptcy court, a number of things could have happened. The bankruptcy court could have said, yes, this isn't related, and they would be uniquely situated to make that call because they lived these allegations. They could say, you know, we'll give you leave to go file your lawsuit somewhere else, or they could reopen the bankruptcy proceeding and address the allegations because of the concern about, you know, this is a board-certified bankruptcy attorney who's in front of this court a lot. And, again, I... If what you're saying is, you know, the bankruptcy court could say, go file your suit somewhere else, I mean, doesn't that just bring us right back to where we are now? It does, but I think that's the whole point, is that Barton wants to give, it's almost, at least the way I picture it, is like a right of first refusal, you know? You've got to go to the bankruptcy court to make the call that the district court had to make, you know, in this case. Is it related? Does it arise from... Is it something the bankruptcy court is willing, at whatever juncture they're in, to deal with? And the bankruptcy court could... I heard somebody recently use the term fire drill in a flea market, and you'll forgive me if it feels a little bit that way, but I digress. I'll give you back your time. Right, well, I mean, and it sort of is. I mean, I think there's a range, and, you know, when you look at the cases throughout all the circuits, there's a range of outcomes that can happen when you go back to the bankruptcy court. But the outcome you're looking for is, we should affirm the application of the Barton doctrine here, and because Cuffs didn't get the bankruptcy court's approval, that's the end of the case. Right. Case is missed. Correct. Yeah, that's exactly the outcome I think should happen. You know, I think the district court got it right, and there are a number of things that Mr. Tufts could have done. He could have, you know, filed suit here and asked to have it stayed until he went back to the bankruptcy court. He could have, you know... But I think it's critical to remember, too, the timing of this. You know, he was aware of and actively seeking a remedy for all of these misdeeds as of 2015. Two more years go by before the bankruptcy proceeding closes, and, you know, and then after it closes, he brings, you know, a new case in a different jurisdiction, telling sort of a different story, and I think if you do what Mr. Tufts is asking you to do, what you're essentially doing is giving a blessing for an easy end around the Barton Doctrine, which is, you know, exactly what isn't supposed to happen. So you would agree that if the estate was still open, then the bankruptcy or the Barton Doctrine would clearly apply? Absolutely, and I believe Mr. Tufts' trial counsel conceded that below, too. Now, I don't envy the judges because you had to go from bankruptcy and Barton Doctrine right into personal jurisdiction, which is, you know, equally exciting, but we have that issue floating out there, too, and I don't want to belabor the point because I think, you know, Barton is, of course, dispositive. If there's no subject matter jurisdiction, you don't need to reach the personal jurisdiction question, but if the court has any questions about our personal jurisdiction argument, I'd be happy to hear them, but otherwise I'm inclined to rest on our briefs. I don't hear any questions, so we appreciate it, Mr. Brownlee. Yes, Rhonda, this is Jacob Flintke for the appellants again. Just a few things. I wanted to give a little context on why Mr. Tufts, you know, I don't think he really waited to raise these issues, but the reason he filed this case after the bankruptcy estate was closed was because he tried to appeal during the bankruptcy while the case was pending, and the case was interlocutory, so he was unable to appeal, and he was repeatedly assured that he was going to be made whole, that everything was going to be OK, that Mr. Hay recognized he'd made a mistake, that everything was going to work out in the end, and then the bankruptcy case was closed, and he still hadn't been made whole. He's not telling a different story. He's trying to be made whole from a wrong that Mr. Hay admitted that he committed. On the Carter case, Carter cited Linton approvingly, yes, but then if you look at it, it goes on to discuss the related-to requirement in detail, and that's when it hones in immediately on Section 1334 because that's the outer limit of bankruptcy jurisdiction.  That exceeds the statutory grand jurisdiction by Congress. And with respect to reopening the case, reopening the case is not just a perfunctory exercise. Section 350 of the Bankruptcy Code says that a case can be opened to give release to the debtor or for cause, and I don't think there's cause to reopen a bankruptcy case to address a dispute between due and counsel when there's no jurisdiction under 1334 to do that. Even when there are allegations of misrepresentations and material omissions that were perpetrated on the almost fraud on the court, that's what bothers me, counsel, is that the bankruptcy court has an affront here that has not been adjudicated because the claim wasn't timely made to it. Well, I think it's just a matter of the form in which that dispute is heard, and I recognize it may be unsatisfactory to have that result, but that's the limit of Section 1334, and under this court's jurisprudence, that is the test that you're supposed to use in the Barton context to determine whether the case is related to the bankruptcy case. So, if there aren't any other questions, Your Honor, I guess we will rest on our breaths. All right. Thank you for the presentation. I actually thought that case was interesting, Mr. Brownlee. We are done with our argument for the morning. I'm going to reconvene with my panel in 10 minutes to conference the cases by Zoom, but court is in recess until 11 o'clock tomorrow morning.